UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CUREVO, INC.,

        Plaintiff,

    v.

SENYON TEDDY CHOE,

        Defendant.

NO. C19-0572RSL

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS
COUNTERCLAIM

This matter comes before the Court on "Defendant's Motion for Leave to File Amended Counterclaim Joining an Additional Party." Dkt. # 47. Between April and December 2018, defendant Senyon Teddy Choe was a member of Curevo's Scientific Advisory Board ("SAB"). The relationship was terminated on or about December 5, 2018, and Curevo filed this action seeking a determination that Choe was an independent contractor and therefore has no right to stock options that had not vested at the time of the termination. Choe filed a counterclaim of wrongful termination in violation of public policy, alleging that Curevo terminated him because he had filed a lawsuit in South Korea against Curevo's minority shareholder, Mogam Institute for Biomedical Research ("MIBR"), and because Choe refused to participate in unlawful business practices in his role as director and trustee of MIBR.

Choe seeks leave to amend his answer to add MIBR as a defendant in this matter. The original complaint alleges that:

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 1

- MIBR' had a 17% ownership interest in Curevo;
- Green Cross Corporation owns the other 83% of Curevo's shares;
- Curevo, MIBR, and Green Cross are part of a family of companies, and the chairman of Green Cross holds the same position at MIBR;
- Choe accepted a position on Curevo's SAB as part of his employment with MIBR;
- Choe performed critical services for Curevo;
- "Curevo's high-level business decisions were all subject to the final approval of its parent Green Cross as part of Choe's duties as the former Director of MIBR" (Dkt. # 45 at 6-7);
- Choe and members of Green Cross disagreed in 2018 regarding business practices at MIBR, and the chairman of Green Cross/MIBR asked Choe to resign from MIBR: when he declined, Choe was terminated as a director at MIBR, although he retained his position on MIBR's board;
- Choe filed a wrongful termination claim against MIBR in South Korea; and
- the chairman of Green Cross/MIBR and the president/trustee of Green Cross/MIBR engineered Choe's ouster from Curevo.

The proposed complaint adds an assertion of personal jurisdiction over MIBR and alleges that MIBR was his employer and that it wrongfully terminated his employment with Curevo in violation of public policy. Curevo opposes the proposed amendment on the grounds that (1) it is futile and (2) adding MIBR, a foreign corporation that Choe has already sued in South Korea, would improperly allow Choe to pursue litigation against MIBR in two fora, squandering the Court's and the parties' resources and causing prejudice.

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 2

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a "strong policy in favor of allowing amendment" (Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994)), and "[c]ourts may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (internal quotation marks and alterations omitted). The underlying purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**(1) Futility**

Choe's proposed amended counterclaim raises a plausible inference that the chief executives of Green Cross and MIBR caused Curevo's board to terminate Choe's relationship with Curevo. Simply having a role in bringing about an allegedly wrongful termination is not sufficient to give rise to liability under Washington law, however: the tort of wrongful discharge lies solely against the employer, not against the manager who effectuated the termination, the entity that contracted for the work, or the co-worker whose complaint triggered the termination. See Awana v. Port of Seattle, 121 Wn. App. 429, 431 (2004) ("The question raised here is whether a cause of action for wrongful discharge in violation of public policy lies not just against the employer, but also against an entity with which the employer had a contract for work. We hold it does not."); Jenkins v. Palmer, 116 Wn. App. 671, 677 (2003) (affirming the dismissal of a wrongful discharge claim against a co-worker because the co-worker was not

plaintiff's employer); Dahlstrom v. U.S., C16-1874RSL, 2019 WL 1514212, at *3 (W.D. Wash. Apr. 8, 2019) ("The nature of the employment contract as between the employer and the employee suggests that a claim that public policy prevents the termination of the contract runs against the employer, not against co-workers or supervisors who may have been involved in the decision to terminate the employment relationship."). Thus, Choe must allege facts plausibly showing not only that MIBR (or its high-level executives) was causally connected to his termination, but that MIBR was actually his employer.

The relevant allegation in the proposed amendment is conclusory: "Choe was an employee of MIBR." Dkt. # 47-1 at ¶ 35. Although allegations of employment do not often require supporting factual averments, in light of the pleadings in this case, more is necessary to raise a plausible inference of liability for wrongful termination under Washington law. Choe has specifically alleged that Curevo was his employer for purposes of this lawsuit and that MIBR is a minority shareholder of Curevo. The contract at issue relates to services Choe provided to Curevo and the compensation he could expect in return from that entity. Dkt. # 1-1. Choe's describes his employment relationship with MIBR as a temporally and factually distinct episode from his employment relationship with Curevo. According to Choe, his employment with MIBR predated his association with Curevo. When that relationship soured, he sued MIBR for wrongful termination in South Korea. Choe alleges that the disagreements that led to his termination from MIBR and/or his lawsuit against MIBR ultimately poisoned Choe's relationship with Curevo: MIBR's executives put pressure on Curevo's board to bring about his dismissal from Curevo. As discussed above, these allegations suggest that a corporate shareholder orchestrated the termination of Choe's employment with a subsidiary. They do not,

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 4

however, raise a plausible inference that MIBR was Choe's employer, and the conclusory allegation of employment - absent any supporting facts - does not create such an inference.

Nor has Choe alleged facts that could support an inference that MIBR is Curevo's alter ego, such that MIBR stepped into Curevo's shoes with regards to Curevo's relationship with Choe.

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary. That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal."

United States v. Bestfoods, 524 U.S. 51, 61-62 (1998) (internal citations omitted) (alterations in original). Choe acknowledges that his termination was effectuated by a vote of Curevo's Board of Directors and has alleged only that the parent's executive officers influenced that decision. The corporate form limits shareholder liability, however (Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 411 (1982)), and disregarding the corporate form, or 'piercing the corporate veil,' is an equitable remedy imposed only in exceptional circumstances (Truckweld Equip. Co., Inc. v. Olson, 26 Wn. App. 638, 643-44 (1980)). Choe has not alleged facts suggesting that MIBR or Curevo used the corporate forms to violate or evade a duty they owed Choe or that he will suffer an unjustified loss if he is not able to sue MIBR for the termination of his employment with Curevo. Meisel, 97 Wn.2d at 409-10.

The proposed amendment seeking to hold MIBR liable for Curevo's conduct therefore

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 5

fails: only an employer can be held liable for wrongful termination in violation of public policy and the proposed allegations do not raise a plausible inference that MIBR stood in Curevo's shoes as his employer.[1] Because the proposed amended complaint would be subject to dismissal, the Court finds that the amendment would be futile. <u>Californians for Renewable Energy v. Cal. Pub. Util. Comm'n</u>, 922 F.3d 929, 935 (9th Cir. 2019); <u>Moore v. Kayport Package Exp., Inc.</u>, 885 F.2d 531, 538 (9th Cir. 1989).

**(2) Prejudice**

In the alternative, Curevo argues that Choe should be required to pursue any and all claims it has against MIBR in a single suit, specifically in the wrongful termination case pending in South Korea. That case, however, involves the termination of Choe's employment from MIBR. This case - and the proposed claim - involves liability arising from the termination of Choe's employment from Curevo. Curevo offers no case law or other authority that would prevent Choe from filing a claim against MIBR in this Court if (and only if) he had a viable cause of action against that entity related to his termination from Curevo.

//

---

[1] To the extent Choe argues that he had two employers while performing services on Curevo's SAB, he relies on case law and regulations developed in the Fair Labor Standards Act ("FLSA") context where "the concept of joint employment should be defined expansively" in order to keep related employers from splitting up the work week in such a way that workers are deprived of the hour and wage protections enacted by Congress. <u>Torres-Lopez v. May</u>, 111 F.3d 633, 638-39 (9th Cir. 1977). Whether MIBR and Curevo could be considered joint employers for purposes of an FLSA claim is not at issue here. The Court finds that the liability of a minority shareholder for its subsidiary's alleged wrongful termination of its employee is instead governed by Washington law as discussed in the text.

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 6

For all of the foregoing reasons, Choe's motion to amend (Dkt. # 47) is DENIED.

Dated this 4th day of November, 2019.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S
MOTION TO AMEND HIS COUNTERCLAIM - 7