UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CUREVO, INC.,

    Plaintiff,

v.

SENYON TEDDY CHOE,

    Defendant and Counterclaimant.

Case No. C19-0572RSL

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Plaintiff Curevo, Inc.'s Motion for Summary Judgment." Dkt. # 96. Curevo seeks a summary determination that Washington law governs the relationship between the parties, that defendant Choe was an independent contractor, not an employee, and that Choe's wrongful discharge counterclaim fails as a matter of law.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 1

there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to defendant, the Court finds as follows:

## BACKGROUND

Curevo is a Washington biotechnology startup focused on getting a new vaccine for shingles to the U.S. market. Curevo has two shareholders: Green Cross Corporation, a South Korean pharmaceutical company that owns approximately 80% of Curevo's stock, and Mogam Institute for Biomedical Research ("MIBR"), a South Korean research institute that owns approximately 20% of Curevo's stock. In July 2017, defendant Choe, in his role as Director of Research for MIBR, proposed the idea of a U.S.-based entity that could pursue clinical trials of the shingles vaccine MIBR had developed. With Green

Cross' approval, Choe worked to establish the U.S. entity that was eventually incorporated as Curevo in November 2017. Choe's job was "to get the [Curevo] project going as soon as possible, as effectively as possible." Dkt. # 98-4 at 44. Choe was involved in the drafting of various inter-corporate agreements, the search for office space in Seattle, the recruitment of and contracting with members of Curevo's Scientific Advisory Board ("SAB"), including himself, and the development of collaborative scientific relationships with Curevo's parent and partner organizations. These activities were generally supervised and reviewed by officers of MIBR and/or Green Cross, some of whom also took on leadership roles in Curevo: Choe acknowledges that the services he performed for Curevo were part of his employment with MIBR.

Choe was officially elected a member of the Curevo SAB in April 2018 and drafted the agreement memorializing the relationship. As set forth in the letter agreement, Choe's membership on the SAB involved providing consulting and other services for approximately six days per calendar year plus attending SAB meetings. In exchange, he received options to purchase Curevo stock subject to certain vesting requirements. Choe and Curevo further agreed that Choe would perform his services for the company "as an independent contractor and that nothing in this agreement shall in any way be construed to give rise to an employment relationship" between Choe and Curevo. Dkt. # 98-3 at 3. Choe specifically agreed - in the document he drafted - that he would not be eligible for employee benefits. There is evidence that Choe continued to be involved in ensuring that Curevo launched properly: he attended Curevo Board meetings, sought and hired Curevo officers and employees, and held bi-weekly meetings with Curevo's Seattle-based partner, the Infectious Disease Research Institute ("IDRI"). According to Choe, he "managed and ran the day-to-day business for Curevo in 2018 and functioned as a *de facto* officer of Curevo." Dkt. # 101 at ¶ 2. Curevo did not hire its first employee until August 2018.

In September 2018, MIBR fired Choe from his position as MIBR's Research Director. MIBR asserts that Choe had a conflict of interest related to multiple positions he was holding with unrelated companies. Choe asserts that he was fired for refusing to sanction improper business dealings across affiliated institutions and companies. He retained his positions on MIBR's Board of Trustees and Curevo's SAB, however, and approached the head of MIBR and Green Cross, Il-Sup Huh, about being appointed as Curevo's Chief Scientific Officer. The suggestion was rejected.

On October 29, 2018, Choe filed a wrongful termination claim against MIBR in South Korea. The complaint was accepted for filing on November 8, 2018. Between those dates, executives of Green Cross and MIBR traveled to Seattle to inform IDRI that they intended to terminate Choe's participation on Curevo's SAB. Choe alleges that his termination was in retaliation for the filing of the South Korean lawsuit against MIBR, but he has not alleged, much less provided evidence, that the decision-makers were aware of the lawsuit when they decided to let him go. Curevo maintains that Choe's ability to manage the relationships between Curevo, its parent companies, and its partners was compromised, and he was therefore terminated on December 5, 2018. Choe's position on MIBR's Board of Trustees was terminated on December 14, 2018.

Faced with the threat of a wrongful discharge claim, Curevo filed this lawsuit in April 2019 seeking a judicial determination that Washington law governs the interpretation of the contract between Choe and Curevo and that Choe was an independent contractor under Washington law. Choe filed a counterclaim of wrongful discharge in violation of public policy. He concedes that Washington law applies, but argues that, as a *de facto* officer of Curevo, he is an employee under the Washington Business Corporation Act, RCW 23B.01.400(15). If the Court disagrees, Choe requests that two questions be certified to the Washington Supreme Court for resolution.

# DISCUSSION

**A. Independent Contractor Versus Employee**

Under Washington law, "[a] servant or employee may be defined as a person employed to perform services in the affairs of another under an express or implied agreement, and who with respect to his physical conduct in the performance of the service is subject to the other's control or right of control." *Hollingbery v. Dunn*, 68 Wn.2d 75, 79 (1966) (citing *Miles v. Pound Motor Co.*, 10 Wn.2d 492 (1941); Restatement (Second) of Agency § 220 (1958); 56 C.J.S. Master and Servant § 1b (1948); 35 Am. Jur. Master and Servant § 2 (1941)). An independent contractor is also contractually bound to perform a service for another, but he or she "is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in performing the services." *Hollingbery*, 68 Wn.2d at 79-80.

> The general test which determines the relation of independent contractor is that he shall exercise an independent employment, and represent his employer only as to the results of his work and not as to the means whereby it is to be accomplished. The chief consideration is that the employer has no right of control as to the mode of doing the work; but a reservation by the employer of the right to supervise the work, for the purpose of merely determining whether it is being done in accordance with the contract, does not affect the independence of the relation.

*Afoa v. Port of Seattle*, 176 Wn.2d 460, 486 (2013) (C.J. Madsen, concurring) (quoting *Larson v. Am. Bridge Co. of New York*, 40 Wash. 224, 227-28 (1905)).

The Washington Supreme Court has adopted Restatement (Second) of Agency § 220(2) (1958) for determining whether, in a given situation, one performs services for another as an employee or as an independent contractor. The relevant factors are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or

business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

The factors "are of varying importance in making the determination. With the exception of the element of control, . . . it is not necessary that all remaining factors be present, for no one factor is conclusive and, in the final analysis, all directly or indirectly relate to, or inferentially bear upon, the crucial factor of control or right of control resident in the employer or principal." *Hollingbery*, 68 Wn.2d at 435-36.

Choe does not acknowledge, much less address, the relevant factors under Washington law, instead declaring that he was a *de facto* officer of Curevo and, therefore, is classified as an employee under RCW 23B.01.400(15). Choe was not, however, engaged as an officer of Curevo. Rather, he undertook various activities designed to get Curevo up and running in his role as MIBR's Director of Research and was then appointed to a board established to advise the nascent company on scientific matters. The

parties specifically agreed in their written contract that Choe's services were performed as an independent contractor and that he was not entitled to employment benefits. Other than the requirement that Choe attend SAB meetings, there is no indication in the agreement or the remainder of the record that Curevo controlled how Choe performed the consulting and other services requested: in fact, the evidence generally shows that it was MIBR and Green Cross that controlled the way in which Choe carried out his Curevo-related activities. Choe was fully employed outside of Curevo and had specific areas of expertise and contacts that Curevo sought to leverage by having him on the SAB. He was not compensated on an hourly basis, but was instead given a $10,000 annual stipend (if he attended all SAB meetings), reimbursed for his expenses, and entitled to stock options (if he reached various anniversary dates as a member of the SAB). The vast majority of the relevant factors, including the key factor of control over the method by which Choe carried out his responsibilities, support a finding that Choe was an independent contractor.

Choe has not identified any case in which the court eschewed the analytical framework discussed above and simply declared that a person who agreed to perform a specific, non-officer role was a *de facto* officer for purposes of RCW 23B.01.400(15). To do so would conflict with Washington law, and the Court declines Choe's invitation to adopt his novel theory. Curevo is therefore entitled to summary judgment on its claims that Washington law governs this dispute and that Choe was an independent contractor, not an employee.

**B. Certification to the Washington Supreme Court**

Choe requests that, if the Court deems him to be an independent contractor, that it certify two legal questions to the Washington Supreme Court: (1) whether a member of a corporate advisory board is an independent contractor or an employee and (2) whether an

independent contractor can bring a claim of wrongful discharge in violation of public policy. Certification of the first issue is not warranted. The Court has not ruled that members of corporate advisory boards can never be employees but rather that, in the circumstances presented here, Choe was not an employee. There is no legal question for the Washington Supreme Court to determine.

With regards to the second issue, the Court recognizes that whether an independent contractor may bring a wrongful discharge claim is an open question under Washington law. *See Awana v. Port of Seattle*, 121 Wn. App. 429, 436 (2004) (acknowledging an analytical framework that would extend the tort to independent contractors who rely on a public policy that is not dependent on the employment relationship and who would otherwise not have a remedy against the alleged tortfeasor). The Court will therefore assume that an independent contractor may assert a claim of wrongful discharge in violation of public policy and determine whether Choe has raised a triable issue of fact on his counterclaim. He has not.

In order to survive summary judgment, Choe has the burden to show that his "discharge may have been motivated by reasons that contravene a clear mandate of public policy." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232-33 (1984). The public policy at issue can be established through prior judicial decision, laws, or regulations, but the question of whether there is a clear public policy at issue is one of law. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725 (2018). Choe asserts that he was dismissed from Curevo's SAB because he had multiple disagreements with Curevo's majority shareholder, Green Cross. These disagreements involved (1) Green Cross' efforts to obtain technology owned by MIBR without proper documentation, (2) Green Cross' failure to document the terms of its shareholder investment in Curevo, and (3) Choe's refusal to sign off on a profit distribution plan that gave Green Cross 99.9% of Curevo's

profits and MIBR only 0.1% of Curevo's profits.

> The tort for wrongful discharge in violation of public policy has generally been limited to four scenarios: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, *i.e.*, whistle-blowing."

*Martin*, 191 Wn.2d at 723 (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936 (1996)). Choe argues that his discharge falls within scenarios 1, 3, and 4. In particular, he argues that a discharge based on any of the disagreements he had with Green Cross "contravenes clear mandates of public policy in Washington prohibiting the discharge of officers who refuse to take actions in breach of their high standard of care and fiduciary duty to the corporation under RCW 23B.08.420." Dkt. # 100 at 17.

As discussed above, Choe was not an officer of Curevo: RCW 23B.08.420 and the duties it imposes are therefore irrelevant. To the extent Choe is suggesting that, as a clear mandate of public policy, anyone associated with a subsidiary must be free to critique and/or obstruct the decisions and actions of the parent corporation(s), he has not identified any court decision, statute, or regulation that establishes such a policy. "Without roots in regulation or judicial precedent, [Choe's] mere opinion that [inter-corporate financial arrangements should be documented and shareholders should more evenly split the proceeds of the subsidiary] does not constitute a clear mandate of public policy." *Martin*, 191 Wn.2d at 725.[1] Because Choe has failed to establish a clear mandate of public policy, his counterclaim fails regardless whether he is an employee or an

---

[1] To the extent Choe is asserting that Curevo terminated his SAB position because he had filed a wrongful discharge claim in South Korean against MIBR, there is no evidence that the decision-makers had knowledge of the lawsuit when the termination decision was made. Causation is therefore lacking.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 9

independent contractor. The second legal question, like the first, does not require certification to the Washington Supreme Court.

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 96) is GRANTED. Plaintiff is entitled to a declaration that Washington law applies and that Choe was an independent contractor. Choe's counterclaim of wrongful discharge in violation of public policy is DISMISSED.

The Clerk of Court is directed to enter judgment in favor of Curevo and against Choe. Curevo's pending motion to strike Choe's amended answer and counterclaim (Dkt. # 107) and the parties' motions in limine (Dkt. # 110 and # 112) are DENIED as moot.

Dated this 10th day of May, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 11